TAYLOR & NEWBY *v.* CHARLES S. TURNER.

C. S. TURNER *v.* TAYLOR & NEWBY.

Fraudulent Conveyance—Purchase of Property in Name of One for Benefit of Another.

Taylor purchased of Montgomery land, for which he executed his notes. A part payment was made of $85 by delivery to Montgomery of a horse belonging to Land, and afterward Land moved onto the property. Other payments were made, by Taylor borrowing money from other parties and executing his note therefor. Taylor and Land both claimed the purchase made for Land. Held that the property would be liable for the debts of Taylor.

APPEAL FROM MADISON CIRCUIT COURT.

December 14, 1868.

OPINION OF THE COURT BY JUDGE WILLIAMS:

This suit was originally begun by C. S. Turner's statutory guardian, but he having arrived at majority, prosecuted it in his own name, against Taylor and Newby and others to set aside convey-

ances alleged to be fraudulent and to subject the property to his debt of some $2,520 on Taylor et al. The court adjudged the sale fraudulent as to two negro girls, but dismissed the petition as to a negro man and two tracts of land, from which both parties have appealed on the same record.

Taylor and Newby were brothers-in-law and lived within a few hundred yards of each other on adjoining farms. At the time of the pretended sale of the negroes there was no ostensible change of possession, the pretended hiring, by Newby, of the negroes to Taylor, the vendor, could not. admonish creditors or purchasers of such sale. ·

Taylor was then in embarrassed circumstances, this debt had been reduced to judgment, at least when the bill of sale bears date, one execution had been issued and stayed for some considerable time, another had gone to the sheriff's hand, the fact that the officer then found the negro man in Newby's possession makes no substantial distinction as to him and the other negroes who still remained in Taylor's possession. The purchases set up in Newby's and Taylor's answers was made in August, the bill of sale bears date the following February, the list of taxable property is of January 10th, shows that both listed the same number of slaves for previous years, no other sales or purchases are spoken of in either the pleadings or proof, no ostensible change of possession was made until after February.

The tract of land claimed by Newby as having been purchased from Taylor and to be paid for by settling the purchase price with Wm. Taylor, the father of W. S. Taylor, on a note held on the latter, is too transparent to escape the scrutinizing gaze of the chancellor.

There is no proof that such a note existed, and if it did, it was probably given for property substantially an advancement and not to be paid until. the old man's death, and then to be settled for in the distribution; the note is not exhibited, though called for by the adverse party, nor is Wm. Taylor's deposition taken, but even if the note existed, there is no proof that Newby ever paid anything on it, or that Wm. Taylor ever recognized, asserted, or. even knew of this transaction.

The Clark Montgomery farm of 87 acres in Washington county is in no better condition.

W. S. Taylor purchased this land of Montgomery, took his title

bond therefor and subsequently took the deed to himself; thus matters remained since the year 1855 down to the brining this suit in January, 1863. Taylor paid on said land a mare at $85 which belonged to 'Squire Land, and gave his own notes, one due the first of the following January, the other at a subsequent date, and Land rented the place out the first year to Taylor's relative, Taylor and himself then lived neighbors in Madison county and both desired to remove to Washington county, and Taylor had purchased a small farm within 1 1-4 miles of this one, Land removed to it the next year. The first payment was made by money borrowed, through the instrumentality of Talor, or Turner's guardian, and it was paid by Taylor, the subsequent payments were made with money borrowed from Stone and this note too was taken up by Taylor, he substituting his note with Newby and others as his security.

Both borrows were made mainly upon Taylor's credit and responsibility, and he paid the obligations.

Land, if not insolvent, was embarrassed and had but few resources; he continued to reside upon the place until he volunteered in the Federal army in 1862, when his wife sold his small personal property and removed with her relatives to Illinois.

Land then rented the farm out for the next year, but Taylor got the rent note.

It is evident that though Land began the negotiation for this farm and that it may have been the intention it should be his when he paid for it, yet he never did pay anything but the mare and had several years use of the place; the purchase being made by Taylor, in his own name, the title being conveyed to him and being upon record, and as Montgomery says, the title bond being surrendered to him through Taylor, and no proof of even an assignment of it to Land, renders this farm liable to Taylor's creditor.

Whilst there was a controversy of opinion as to the value of the slaves when levied upon and taken by Newby from the sheriff by executing bond, yet we do not feel authorized to disturb the values as fixed by the commissioner, as perhaps all the facts detailed by the evidence sustain such valuation.

Wherefore, said judgment is affirmed on the appeal of Taylor and Newby, and reversed on the appeal of Turner, with directions to the court below to subject the value of the negro man and the farm, claimed by Newby as being purchased from Taylor; also

to subject the Clark Montgomery farm in Washington county claimed by Land to the judgment of Turner.

*Burnam, for Taylor, &c.*

*Turner, for Turner.*